**LAW OFFICES OF ALEX GALVEZ**
Alex Galvez, Esq. SBN263824
1151 West 6th Street
Los Angeles, CA 90017
Tel.: (213) 623-2358
Fax.: (213) 623-2445

Attorneys for Petitioner,
PATRICIA GARCIA JIMENEZ

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

PATRICIA GARCIA JIMENEZ,

Petitioner,

VS.

MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; RODENY S. SCOTT, Commissioner, United States Customs and Border Protection; DAVID J. VENTURELLA, Acting Director, Immigration and Customs Enforcement; THOMAS GILES, Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; EDDY WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; JAMES JANECKA, Warden of ADELANTO ICE PROCESSING CENTER, in his/her capacity as warden of the ADELANTO ICE PROCESSING CENTER, and DOES 1 to 10, INCLUSIVE.

Respondents.

Case No. 5:26-cv-5696

Agency Case No. 078-049-639

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR IMMEDIATE RELEASE; REQUEST FOR EXPEDITED ADJUDICATION**

## INTRODUCTION

1. Petitioner Patricia Garcia Jimenez respectfully petitions this Court for a writ of habeas corpus ordering her immediate release from civil immigration detention.
2. For approximately twenty-six years before June 10, 2026, Petitioner lived physically at liberty in the United States.
3. During those decades, she raised United States citizen children, cared for family members, established a home, maintained employment, paid taxes, developed enduring community ties, and pursued immigration relief through established governmental processes. Petitioner has no criminal convictions.
4. She has an approved immediate-relative visa petition filed by her United States citizen son.
5. She also has an adjustment-of-status application that has remained unresolved not because USCIS adjudicated the application against her on its merits, but because two components of the Federal Government have taken directly conflicting positions concerning which agency possesses jurisdiction to adjudicate it.
6. Yet Petitioner has remained continuously incarcerated since June 10, 2026.

7. No neutral adjudicator has ever determined that she presents a danger to the community.

8. No neutral adjudicator has ever determined that she presents a genuine risk of flight. No neutral adjudicator has ever determined that GPS monitoring, regular reporting, residence restrictions, electronic supervision, third-party sponsorship, or other reasonable noncustodial conditions would be inadequate to secure her future appearance.

9. And no neutral adjudicator determined before June 10 that any material change in Petitioner's circumstances made it necessary suddenly to extinguish approximately twenty-six years of established physical liberty.

10. The reason is extraordinary.

11. When Petitioner sought custody review, the Immigration Judge did not deny release after weighing danger, flight risk, family ties, community ties, immigration history, or alternatives to detention.

12. The Immigration Judge instead held that he possessed no jurisdiction to decide those questions at all.

13. On September 1, 2026, Immigration Judge Steven Marcus determined that Petitioner is an “arriving alien” who had been paroled into the United States pursuant to INA § 212(d)(5), that her current detention is governed by INA § 235(b), 8 U.S.C. § 1225(b), and that under *Matter of Q. Li*, 29 I. & N. Dec.

66 (BIA 2025), the Immigration Court therefore lacks jurisdiction to conduct an ordinary bond redetermination under § 236(a). *Matter of Q. Li* holds that a person initially detained under § 235(b), released on § 212(d)(5)(A) parole, and later returned to custody following termination of parole returns to § 235(b) custody[1].

14. That jurisdictional determination is particularly remarkable because USCIS had previously reached the opposite conclusion about Petitioner's status.

15. On March 24, 2025, USCIS administratively closed Petitioner's pending Form I-485 after expressly determining that Petitioner was "not an 'arriving alien.'"

16. USCIS consequently advised Petitioner that, because she remained a respondent in removal proceedings and was not an arriving alien, "only EOIR has jurisdiction to grant or deny your Form I-485 based on the merits."

17. USCIS therefore declined to adjudicate her adjustment application.

18. EOIR now proceeds from the opposite premise.

---

[1] Petitioner recognizes that 8 C.F.R. § 1001.1(q) defines an "arriving alien" to remain an arriving alien notwithstanding parole under § 212(d)(5), including after such parole is terminated or revoked, subject to regulatory exceptions not presently alleged to control here. See also *Matter of Q. Li*, 29 I. & N. Dec. 66, 71 (BIA 2025). Petitioner therefore does not premise her principal constitutional claim upon obtaining a district-court ruling that the Immigration Judge necessarily misapplied the regulatory definition. Rather, she assumes *arguendo* that Respondents' statutory classification is correct and maintains that the Fifth Amendment independently limits the procedures by which twenty-six years of established liberty may be extinguished.

19. The Immigration Judge has determined that Petitioner **is** an arriving alien.

20. That conclusion not only affects adjustment jurisdiction; the Immigration Judge used it to conclude that the Immigration Court has no jurisdiction to decide whether Petitioner's present imprisonment is necessary.

21. Petitioner therefore occupies an extraordinary administrative void.

22. USCIS refused to adjudicate adjustment because it determined that she was not an arriving alien and that EOIR possessed jurisdiction.

23. EOIR now treats her as an arriving alien. The Immigration Court has correspondingly concluded that it lacks jurisdiction over her liberty.

24. Meanwhile, Petitioner remains incarcerated.

25. The Immigration Judge has now continued Petitioner's removal proceedings until October 30, 2026 at 10:00 a.m., specifically allowing additional time for the adjustment matter to be addressed with USCIS.

26. Thus, removal is not imminent. There is no administratively final removal order presently being executed.

27. The Immigration Court itself has postponed adjudication while another component of the Federal Government decides what it will do concerning Petitioner's adjustment application.

28. The practical consequence is stark.

29. Petitioner remains in a detention cell not because removal is about to occur, not because a neutral adjudicator has found her dangerous, and not because a neutral adjudicator has found that no conditions could reasonably secure her appearance.

30. She remains incarcerated while the Government resolves its own interagency jurisdictional problem.

31. The Fifth Amendment does not permit the entire cost of that governmental uncertainty to be imposed upon Petitioner's physical liberty.

32. Nor does the statutory classification applied by the Immigration Judge resolve the constitutional question.

33. For purposes of Petitioner's principal Fifth Amendment claim, this Court need not decide whether *Matter of Q. Li* was correctly applied or whether § 235(b) ultimately supplies statutory authority for Petitioner's detention.

34. Even where a statute authorizes detention, the Due Process Clause may require procedural protections before the Government extinguishes an existing protected liberty interest. See *Young v. Harper*, 520 U.S. 143, 147–49 (1997); *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972)[2].

[2] The recent authority recognizing a protected liberty interest in continued freedom from immigration detention is substantial and increasingly uniform within this District. See *Galeas Dolores Eris v. Dep't of Homeland Sec.*, No. 5:26-cv-04219-MAR, Dkt. 18 at 4–5 (C.D. Cal. Sept. 22, 2026) (twenty-seven years of residence and community ties created a "substantial liberty interest" in remaining free from custody; immediate release ordered); *Trujillo-Hernandez*

35. Recent decisions within this District have repeatedly applied that principle to immigration detention.

36. On September 21, 2026, the Central District held in *Trujillo-Hernandez v. Mullin*, No. 5:26-cv-03282-SP, that a noncitizen who established a life in the United States while released on immigration parole acquired a protected liberty interest and was constitutionally entitled to pre-deprivation process before re-detention. The Court ordered immediate release.

37. On September 14, 2026, *Kadovic v. Santacruz*, No. 5:26-cv-05014-PD, went further. The court recognized a protected liberty interest even where the Government had not previously detained and formally released the petitioner; years of governmental acquiescence in physical liberty, combined with the absence of evidence of danger or flight, created a strong liberty interest. The court ordered release within twenty-four hours.

38. And on September 22, 2026, *Galeas Dolores Eris v. Department of Homeland Security*, No. 5:26-cv-04219-MAR, held that a long-present noncitizen had a substantial liberty interest in remaining free from detention,

*v. Mullin*, No. 5:26-cv-03282-SP, Dkt. 15 (C.D. Cal. Sept. 21, 2026) (granting habeas relief and immediate release where humanitarian parolee was re-detained without pre-deprivation process); *Kadovic v. Santacruz*, No. 5:26-cv-05014-PD, Dkt. 10 (C.D. Cal. Sept. 14, 2026) (recognizing that the Government's implicit decision to permit a noncitizen to remain at liberty may give rise to a protected liberty interest); *Borisova v. Mullin*, No. 5:26-cv-04156-MAR, Dkt. 15 (C.D. Cal. Sept. 11, 2026) (ordering immediate release and requiring pre-deprivation process before renewed detention); *Orozco-Salazar v. Warden Desert View Facility*, No. 5:26-cv-04555-KES, Dkt. 13 (C.D. Cal. Aug. 25, 2026) (same)

found detention without a pre-deprivation hearing unconstitutional, rejected a later bond hearing as an adequate cure, and ordered immediate release.

39. Petitioner's liberty interest is exceptionally substantial. She did not live at liberty for two years or four years. She lived at liberty for approximately twenty-six years.

40. The Immigration Judge's September 1 ruling consequently leaves this Court as the only neutral judicial forum presently positioned to determine whether Petitioner's continued physical incarceration comports with the Constitution and to provide an effective remedy for unconstitutional custody[3].

41. The Great Writ exists for precisely that purpose.

42. Petitioner therefore requests immediate release, subject to reasonable noncustodial conditions of supervision.

## JURISDICTION

43. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3), which authorizes habeas relief where a person is "in custody in violation of the Constitution or laws or treaties of the United States."

[3] The regulation expressly provides that "an immigration judge may not redetermine conditions of custody" for "[a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act." 8 C.F.R. § 1003.19(h)(2)(i)(B). Petitioner does not ignore that regulatory limitation. It is precisely why this case presents a constitutional problem: if the regulation removes ordinary IJ bond jurisdiction, no Immigration Judge is presently available to decide whether Patricia's continued incarceration is actually necessary. The existence of statutory or regulatory detention authority does not answer the separate Fifth Amendment question whether an established liberty interest could be extinguished without constitutionally sufficient pre-deprivation process.

44. Petitioner's challenge lies at the historic core of habeas corpus because she challenges her present physical imprisonment and seeks release from that imprisonment. See *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024).

45. Petitioner does not ask this Court to review or vacate a final removal order.

46. She does not ask this Court to determine whether she is ultimately removable.

47. She does not ask this Court to adjudicate her Form I-485. She does not ask this Court to compel the Immigration Judge to grant adjustment of status.

48. Her claim is collateral to those immigration merits questions: she challenges the legality of her present physical custody and the absence of constitutionally sufficient procedures protecting her established liberty.

49. Sections 1252(a)(5) and 1252(b)(9) therefore do not bar this action. See *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018).

50. Section 1252(g) likewise does not strip jurisdiction because Petitioner's claim does not challenge the Attorney General's discretionary decision to commence proceedings, adjudicate a removal case, or execute a removal order. See *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999).

51. To the extent Respondents invoke 8 U.S.C. § 1226(e), that provision does not eliminate habeas jurisdiction over constitutional claims and questions of

law. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

52. More fundamentally, there is no discretionary bond determination for this Court to second-guess.

53. The Immigration Judge expressly declined to exercise bond discretion because he concluded he lacked jurisdiction.

54. Petitioner's claim therefore does not ask this Court to reweigh evidence considered by the Immigration Judge. No such weighing occurred.

## VENUE AND CUSTODY

55. Venue is proper in the Central District of California because Petitioner is physically confined within this District at the Adelanto immigration detention complex.

56. Petitioner's immediate custodian is the Warden of the facility in which she is confined.

57. A core habeas petition challenging present physical custody is properly brought in the district of confinement and ordinarily names the immediate physical custodian. *Doe*, 109 F.4th at 1197–99.

58. San Bernardino County lies within the Eastern Division of this Court.

//

//

## PARTIES

59. Petitioner PATRICIA GARCIA JIMENEZ is a forty-seven-year-old native and citizen of Mexico.

60. Petitioner is currently detained by the Department of Homeland Security and Immigration and Customs Enforcement within the Central District of California. Petitioner has remained continuously detained since June 10, 2026.

61. Respondent WARDEN is Petitioner's immediate physical custodian.

62. Respondent JAIME RIOS is sued in his official capacity as the responsible ICE Enforcement and Removal Operations official exercising authority over Petitioner's detention, custody, transfer, supervision, and release within the Los Angeles Area of Responsibility.

63. Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of the United States Department of Homeland Security.

64. DOES 1 through 10 are federal officials responsible in whole or in part for Petitioner's custody and whose identities are presently unknown.

//

//

//

//

## FACTUAL BACKGROUND

### A. Petitioner Has Lived at Liberty in the United States Since Approximately 2000

65. Petitioner was born in Mexico on April 28, 1979. Petitioner entered the United States in approximately 2000. The record reflects that she received immigration parole associated with her entry.

66. The September 1, 2026 Immigration Court order likewise expressly states that Petitioner "was paroled into the United States pursuant to the grant of parole under INA section 212(d)(5)."

67. Immigration proceedings were initiated against Petitioner in 2000.

68. USCIS's March 24, 2025 decision states that Petitioner was issued a Notice to Appear on April 7, 2000.

69. USCIS further states that at a scheduled June 7, 2000 hearing there was a "failure to prosecute," but that the Immigration Judge did not dismiss or terminate the removal proceedings.

70. Those proceedings consequently remained pending. Yet for approximately twenty-six years following her entry, the Government did not continuously incarcerate Petitioner.

71. She lived openly in Southern California. She formed a family. She worked. She maintained a residence. She developed substantial community ties. She

raised three United States citizen children. Her family also includes a young United States citizen grandchild.

72. If released, Petitioner has a stable proposed residence in Port Hueneme with her United States citizen son, Carlos Fernando Cisneros Garcia.

73. Petitioner's employment records reflect recent employment in Ventura County, including employment with Wave AG LLC in Oxnard and Glass House in Camarillo.

74. The record reflects no criminal convictions.

75. A Ventura County criminal docket contained in Petitioner's supporting materials shows that a 2012 matter proceeded repeatedly as a “missing complaint”; ultimately, no complaint was filed, Petitioner was discharged, bail was exonerated, and the case was later closed.

76. Petitioner's history thus reflects decades of ascertainable residence, family, work, and community connections rather than a history of disappearing from governmental authority.

### B. Petitioner's United States Citizen Son Filed an Immediate-Relative Petition on Her Behalf

77. On July 24, 2024, Petitioner's United States citizen son Carlos Fernando Cisneros Garcia filed Form I-130 on Petitioner's behalf.

78. USCIS approved that petition on January 17, 2025.

79. The approval classified Petitioner as the parent of a United States citizen under INA § 201(b).

80. Petitioner therefore has an approved immediate-relative petition providing a concrete family-based pathway through which she seeks lawful permanent residence.

### C. Petitioner Filed Form I-485, But USCIS Administratively Closed It Because USCIS Determined She Was Not an Arriving Alien

81. On July 24, 2024, Petitioner also filed Form I-485 seeking adjustment of status under INA § 245.

82. On March 24, 2025, USCIS issued a written Notice of Administrative Closure.

83. USCIS did not deny the I-485 on its substantive merits. Instead, USCIS reviewed Petitioner's file and determined that her removal proceedings remained pending before EOIR. USCIS then expressly stated:

> "USCIS also determined that you are not an 'arriving alien.'"

84. USCIS explained the jurisdictional consequence in equally clear terms:

> "Since you are a respondent in a removal proceeding, and you are not an 'arriving alien,' only EOIR has jurisdiction to grant or deny your Form I-485 based on the merits."

85. Accordingly, USCIS administratively closed Petitioner's I-485 for lack of jurisdiction.

86. USCIS further advised Petitioner that if the removal proceedings were dismissed or terminated without EOIR adjudicating adjustment, she could submit the court order and request reopening of the I-485.

87. The March 24 notice therefore established USCIS's formal position: Patricia Garcia Jimenez was not an arriving alien, and EOIR—not USCIS—possessed adjustment jurisdiction.

### D. ICE Detained Petitioner on June 10, 2026

88. On June 10, 2026, ICE officers took Petitioner into immigration custody.

89. At that moment, Petitioner had lived physically at liberty in the United States for approximately twenty-six years.

90. Before detention, Petitioner was not provided an individualized hearing before a neutral adjudicator. The Government did not first establish that she had become dangerous. The Government did not first establish that she had become a genuine flight risk.

91. The Government did not first identify a material change in circumstances demonstrating that reasonable supervision could no longer protect its interests.

92. The Government did not first establish that incarceration rather than reporting, electronic monitoring, residence requirements, or other conditions was necessary.

93. Petitioner's approximately twenty-six years of physical liberty ended without neutral pre-deprivation review.

94. She has remained incarcerated ever since.

### E. The Immigration Court Subsequently Held That It Has No Jurisdiction to Determine Whether Petitioner's Detention Is Necessary

95. Petitioner sought custody redetermination before the Adelanto Immigration Court.

96. On September 1, 2026, Immigration Judge Steven Marcus denied custody redetermination.

97. The denial was not based upon a finding that Petitioner was dangerous. It was not based upon a finding that Petitioner would flee. It was not based upon the inadequacy of alternatives to detention. Rather, the Immigration Judge relied upon *Matter of Q. Li*. The Immigration Judge found:

> "Respondent is an arriving alien who was paroled into the United States pursuant to the grant of parole under INA section 212(d)(5)."

98. The Immigration Judge further concluded that Petitioner was "properly detained under INA section 235(b) detention authority." He therefore concluded:

> "Accordingly, the Court finds it has no jurisdiction to proceed in adjudicating bond reconsideration request under INA section 236(a)."

99. The order identifies no danger evidence. It identifies no flight-risk evidence. It applies no burden of proof concerning necessity of detention. It conducts no individualized assessment of Petitioner's approximately twenty-six years of residence. It conducts no individualized assessment of her United States citizen family members. It conducts no individualized assessment of her employment history. It conducts no individualized assessment of her criminal history. It conducts no individualized assessment of alternatives to detention.

100. The Immigration Judge therefore did not determine that imprisonment is warranted. He determined only that he lacked authority to decide whether imprisonment is warranted.

**THE GOVERNMENT'S TWO COMPONENTS HAVE TAKEN INCOMPATIBLE POSITIONS CONCERNING THE CLASSIFICATION THAT CONTROLS PETITIONER'S IMMIGRATION CASE**

101. The resulting contradiction is impossible to ignore. USCIS determined in March 2025 that Petitioner is not an arriving alien.

102. The Immigration Court determined in September 2026 that Petitioner is an arriving alien.

103. USCIS relied upon the first proposition to decline jurisdiction over Petitioner's I-485.

104. EOIR has now proceeded from the second proposition when determining Petitioner's custody classification. Petitioner did not create that conflict. She cannot resolve it from a detention facility. Yet she continues to bear its entire practical cost through physical incarceration.

105. The constitutional significance of that conflict does not depend upon this Court resolving which agency was correct[4].

106. Rather, the contradiction dramatically demonstrates the risk of erroneous deprivation and the absence of any current individualized adjudication of necessity.

107. If USCIS was correct that Petitioner is not an arriving alien, the premise underlying the Immigration Judge's § 235(b) custody ruling becomes questionable.

108. If the Immigration Judge is correct that Petitioner is an arriving alien, USCIS's prior jurisdictional basis for refusing to adjudicate adjustment becomes questionable.

---

[4] The regulatory framework confirms why the "arriving alien" classification matters so significantly to the adjustment proceedings. Under 8 C.F.R. § 1245.2(a)(1)(i), when a noncitizen in removal proceedings is **not** an arriving alien, "the immigration judge hearing the proceeding has exclusive jurisdiction" over adjustment. By contrast, § 1245.2(a)(1)(ii) generally deprives the Immigration Judge of adjustment jurisdiction over an **arriving alien**, subject to a limited advance-parole exception. Correspondingly, 8 C.F.R. § 245.2(a)(1) provides that USCIS has jurisdiction over an adjustment application unless jurisdiction lies with the Immigration Judge under § 1245.2(a)(1). Thus, USCIS's March 2025 determination that Patricia was *not* an arriving alien and EOIR's September 2026 determination that she *is* an arriving alien point toward opposite adjustment-jurisdiction consequences under the governing regulations.

109. Either way, the Federal Government's unresolved classification problem supplies no individualized reason to imprison Petitioner.

**THE OCTOBER 30 CONTINUANCE DEMONSTRATES THAT REMOVAL IS NOT IMMINENT AND THAT CONTINUED DETENTION NOW DEPENDS UPON GOVERNMENTAL ADMINISTRATIVE DELAY**

110. The Immigration Court has continued Petitioner's case to October 30, 2026 at 10:00 a.m.

111. The purpose of the continuance is to allow additional time for Petitioner's adjustment matter to be addressed with USCIS. This development is constitutionally important. Petitioner's detention is not presently facilitating execution of an imminent final removal order.

112. Her proceedings remain ongoing.

113. The Immigration Court itself has determined that additional time is necessary before the case can proceed because of unresolved USCIS action.

114. Thus, the immediate trajectory of Petitioner's immigration case depends materially upon another federal agency acting upon an adjustment application first filed in July 2024.

115. Petitioner has no control over USCIS's processing schedule. She cannot compel agency adjudication merely by remaining incarcerated. Her detention does not make USCIS act faster.

116. Nor does imprisonment resolve the interagency jurisdictional conflict.

117. If the Immigration Court continues proceedings approximately another two months, Petitioner will cross approximately six months of continuous detention on or about December 10, 2026.

118. But Petitioner's constitutional claim does not arise for the first time at six months.

119. The significance of October 30 is instead that it demonstrates why continued detention lacks individualized necessity: after the Government was afforded still more time to resolve its own adjustment problem, Petitioner remains imprisoned without any neutral determination that detention serves a necessary regulatory purpose.

**PETITIONER DOES NOT CONTEND THAT HER FAILURE TO APPEAL THE SEPTEMBER 1 ORDER CONSTITUTES EXHAUSTION; SHE AFFIRMATIVELY SEEKS WAIVER OF PRUDENTIAL EXHAUSTION**

120. Petitioner did not appeal the Immigration Judge's September 1 custody-jurisdiction ruling to the Board of Immigration Appeals.

121. Petitioner does not contend that allowing the appeal deadline to expire somehow constitutes exhaustion. It does not. See *Laing v. Ashcroft*, 370 F.3d 994, 997–1001 (9th Cir. 2004).

122. Instead, Petitioner forthrightly acknowledges the absence of BIA review and asks this Court to exercise its discretion to waive the prudential exhaustion requirement because the purposes served by exhaustion are

absent here and because the recognized exceptions to prudential exhaustion apply. That distinction is important.

123. *Laing* cautions that prudential exhaustion is not to be ignored casually.

124. But *Laing* simultaneously recognizes that exhaustion may be waived where administrative remedies are inadequate or inefficacious, pursuit would be futile, irreparable injury would result, or the administrative proceedings would be void. 370 F.3d at 1000[5].

125. The Ninth Circuit subsequently articulated the relevant institutional considerations in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

126. Those factors ask whether agency expertise is necessary to generate the record and reach a proper decision, whether waiver would encourage deliberate bypass of the administrative scheme, and whether administrative review is likely to permit the agency to correct its own mistakes and obviate judicial review.

---

[5] Petitioner does not contend that the Board lacked authority to review the Immigration Judge's conclusion concerning bond jurisdiction. EOIR's own guidance recognizes that the Board may determine whether an Immigration Judge possessed jurisdiction to make a bond determination. See 8 C.F.R. § 1003.19(f); EOIR Policy Manual, Part III, § 6.2. That theoretical appellate authority does not resolve the exhaustion question presented here. Even a successful appeal would at most produce a future first-instance custody proceeding; it could not supply the pre-deprivation process Petitioner alleges was constitutionally required before her June 10 detention, restore the liberty already lost, compel USCIS to act upon the I-485, or eliminate the need to decide the independent Fifth Amendment question.

127. In immigration-detention habeas litigation, the Ninth Circuit has confirmed that exhaustion is prudential rather than jurisdictional and that courts retain discretion to excuse it. *Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017).

128. Recent Central District authority has applied precisely those principles to excuse failure to pursue a BIA bond appeal where the petition presented constitutional and legal questions appropriate for federal adjudication. See *Morales v. Mullin*, No. 5:26-cv-04576-CTS, Dkt. 12 at 5–7 (C.D. Cal. Sept. 11, 2026).

129. This case presents an even stronger basis for waiver because there is no merits bond determination for the BIA to review.

## THE PUGA FACTORS WEIGH STRONGLY AGAINST REQUIRING EXHAUSTION

### A. The First Puga Factor Weighs Against Exhaustion Because No Further Agency Expertise or Record Development Is Necessary to Resolve the Constitutional Question

130. The first *Puga* factor asks whether agency expertise makes administrative consideration necessary to generate a proper record and reach a proper decision. It does not.

131. Petitioner's principal claim does not require this Court to decide how much bond should have been imposed. It does not require the Court to reweigh the *Matter of Guerra* factors.

132. It does not ask the Court to decide whether an Immigration Judge gave sufficient weight to Petitioner's family or employment evidence.

133. There was no such decision. The Immigration Judge stopped at jurisdiction. The constitutional facts are already established in the documentary record.

134. Petitioner lived physically at liberty for approximately twenty-six years. ICE detained her on June 10, 2026. No neutral pre-deprivation hearing occurred.

135. USCIS previously determined that Petitioner was not an arriving alien.

136. The Immigration Judge later determined that she was. The Immigration Judge concluded that he lacked jurisdiction to decide bond. No neutral adjudicator has found Petitioner dangerous. No neutral adjudicator has found Petitioner a flight risk. No neutral adjudicator has found conditions of supervision inadequate.

137. And the Immigration Court has continued Petitioner's merits proceedings to permit additional USCIS action.

138. Deciding whether those circumstances satisfy the Fifth Amendment does not require specialized BIA expertise.

139. Courts within this District have repeatedly concluded that BIA expertise is unnecessary where the habeas claim turns upon legal or constitutional adequacy rather than discretionary evidentiary reweighing. *Morales*, for example, held that prudential exhaustion did not bar review where the petitioner bypassed BIA review but presented a constitutional/legal challenge to custody procedures.

140. *Gomez Fuentes v. Mullin*, No. 5:26-cv-01651-KS (C.D. Cal. June 25, 2026), likewise found the first *Puga* factor opposed exhaustion where the BIA's expertise was unnecessary to resolve the legal adequacy of the custody process.

141. Here, the case for waiver is stronger still because no custody merits decision exists.

142. The first *Puga* factor weighs decisively against requiring exhaustion.

**B. The Second Puga Factor Weighs Against Exhaustion Because Waiver in This Unusual Case Would Not Encourage Routine Bypass of the Administrative Bond Scheme**

143. The second *Puga* factor asks whether excusing exhaustion would encourage deliberate bypass of the administrative scheme.

144. It would not. This is not an ordinary bond appeal.

145. Petitioner did not receive an individualized bond hearing and then seek a more sympathetic forum because she disliked the result.

146. She did not lose on dangerousness. She did not lose on flight risk. She did not receive a bond amount she considers excessive. She did not lose an argument concerning alternatives to detention.

147. The Immigration Judge instead determined that the administrative bond scheme itself is unavailable to her. Thus, this Petition does not bypass an available first-instance administrative adjudication of Petitioner's liberty.

148. It arises because the first-instance neutral adjudicator has declared that he lacks authority to perform that adjudication.

149. The Ninth Circuit has already explained that the risk of improper bypass is reduced where federal jurisdiction is confined to genuine, colorable constitutional or legal challenges. *Hernandez*, 872 F.3d at 989.

150. *Morales* recently applied that principle in this District and rejected the Government's argument that waiver would improperly encourage detainees to bypass the BIA.

151. The limitation here is even narrower. Waiver would not establish that every person denied bond may ignore BIA review.

152. It would establish only that a person who lived at liberty for approximately twenty-six years, was detained without pre-deprivation process, and was thereafter told that the Immigration Court has no

jurisdiction even to decide whether detention is necessary may ask an Article III habeas court to adjudicate her constitutional claim.

153. That narrow circumstance creates no meaningful threat to the ordinary administrative appellate process.

154. Thus, the second *Puga* factor therefore weighs against exhaustion.

**C. The Third Puga Factor Weighs Against Exhaustion Because BIA Review Is Unlikely to Eliminate the Need for Judicial Resolution of the Constitutional Claim**

155. The third *Puga* factor asks whether administrative review is likely to permit the agency to correct its own mistake and thereby preclude the need for judicial review.

156. It is important to define the "mistake" actually alleged. Petitioner's principal claim is not merely that Judge Marcus misread *Matter of Q. Li*. Petitioner does not need this Court to resolve that issue to grant relief.

157. For purposes of the principal constitutional claim, the Court may assume without deciding that the Immigration Judge correctly identified § 235(b) as the applicable statutory detention provision.

158. The question remains whether the Constitution permitted the Government to extinguish approximately twenty-six years of established liberty without neutral pre-deprivation process and thereafter continue confinement without any individualized finding of necessity.

159. A BIA appeal cannot eliminate the need to decide that question.

160. Even if the Board reversed the September 1 order and concluded that the Immigration Court had § 236(a) bond jurisdiction, the most the administrative process could provide would be a future bond hearing.

161. That future hearing cannot provide the process that should have preceded detention on June 10. It cannot return the months of liberty already lost. It cannot transform a post-deprivation hearing into pre-deprivation process.

162. And it cannot resolve the independent constitutional question concerning the Government's authority to continue custody while USCIS and EOIR maintain incompatible jurisdictional positions regarding Petitioner's adjustment application.

163. The prospect of BIA correction is additionally diminished because the Immigration Judge did not invent the relevant legal rule.

164. He applied the Board's own precedential decision in *Matter of Q. Li*. Any appeal would therefore ask the Board either to distinguish Petitioner's circumstances from its own precedent or reconsider the application of a rule the Board itself announced.

165. Petitioner does not contend that favorable BIA action is literally impossible.

166. She contends that even favorable BIA action would not remedy the constitutional deprivation presented here and would not obviate federal judicial review.

167. That is the inquiry *Puga* requires.

168. The third factor therefore weighs against prudential exhaustion.

**THE LAING EXCEPTIONS INDEPENDENTLY REQUIRE WAIVER**

169. Even if one or more *Puga* factors favored administrative review, *Laing* recognizes independent grounds for waiver where the administrative remedy is inadequate or inefficacious, pursuit would be futile, or irreparable injury would result. 370 F.3d at 1000. Multiple exceptions apply simultaneously here.

**A. BIA Review Is Inadequate and Inefficacious as a Remedy for the Constitutional Injury**

170. Patricia challenges present physical imprisonment. She challenges the absence of process **before** approximately twenty-six years of established liberty were extinguished.

171. BIA review cannot restore pre-deprivation process.

172. It cannot compensate Petitioner for each additional day of liberty lost while an appeal proceeds. It cannot compel USCIS to reopen or adjudicate Petitioner's I-485. It cannot reconcile USCIS's March 2025 determination

that Patricia is not an arriving alien with EOIR's September 2026 conclusion that she is.

173. Nor can it decide whether continued incarceration while that interagency conflict delays Petitioner's merits proceedings violates the Fifth Amendment.

174. At most, a favorable BIA decision could remand the matter for a future bond hearing. Such relief is incomplete.

175. Recent Central District decisions recognize that the availability of a later hearing does not necessarily cure the constitutional injury where due process required procedures before re-detention.

176. *Galeas Dolores Eris* expressly held that a post-deprivation bond hearing did not remedy the completed violation and that restoration of the prior status quo through release was required.

177. *Trujillo-Hernandez* likewise ordered immediate release upon finding that a previously released parolee had been detained without constitutionally adequate pre-deprivation procedures.

178. *Kadovic* ordered release within twenty-four hours after finding that prior Government acquiescence in physical liberty gave rise to constitutional protection even though the petitioner had not previously undergone the conventional detention-and-release sequence.

179. The administrative remedy is therefore inadequate to provide the principal relief required by Petitioner's claim.

**B. BIA Review Would Be Futile as a Remedy for the Pre-Deprivation Due Process Violation**

180. Petitioner does not use "futility" to mean merely that she predicts she might lose.

181. *Laing* properly requires more. Futility here is remedial. The constitutional event has already occurred. ICE detained Petitioner on June 10 without a neutral pre-deprivation hearing.

182. An administrative appellate body cannot go backward in time.

183. It cannot create a June 9 hearing on October 30, November 30, or some later date. Nor can a BIA appeal give the Immigration Judge authority to adjudicate custody while simultaneously preserving the Board's controlling construction of § 235(b) under *Q. Li* unless the Board distinguishes Petitioner's circumstances.

184. Most importantly, Petitioner's constitutional claim exists even if the Board agrees completely with Judge Marcus's statutory classification.

185. If § 235(b) governs, the question remains whether the Fifth Amendment required pre-deprivation process before the Government revoked an exceptionally substantial liberty interest.

186. Administrative review is therefore incapable of eliminating the federal constitutional dispute.

**C. Continued Detention Is Irreparable Injury**

187. *Laing* separately recognizes irreparable injury as a ground for excusing prudential exhaustion. That exception is independently satisfied.

188. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

189. The Ninth Circuit has repeatedly recognized that loss of physical liberty through immigration detention constitutes irreparable harm. See *Hernandez*, 872 F.3d at 994.

190. Each day of detention lost while a BIA appeal proceeds is irretrievable. Money damages cannot restore it. A favorable administrative ruling months later cannot restore it.

191. Petitioner's injury also extends to the family and community relationships developed during approximately twenty-six years of liberty.

192. Recent Central District authority has treated continuing detention as sufficient irreparable harm to excuse exhaustion.

193. In *Salazar-Sorto v. Mullin*, No. 5:26-cv-04690-KES (C.D. Cal. Sept. 4, 2026), the court analyzed both the *Puga* factors and *Laing*, concluded that exhaustion was excused, and ultimately ordered immediate release.

194. The same conclusion is warranted here.

**THIS CASE IS MATERIALLY DIFFERENT FROM AN ORDINARY UNEXHAUSTED BOND CHALLENGE**

195. Respondents may invoke *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011), for the general proposition that a detainee ordinarily should appeal an adverse bond decision to the BIA before seeking habeas review.

196. Petitioner does not dispute that general rule. It does not resolve this case.

197. *Leonardo* addresses the ordinary sequence in which an Immigration Judge conducts a bond proceeding, renders a custody determination, and the detainee seeks review of that adjudication.

198. Here, Judge Marcus expressly refused to conduct that adjudication because he concluded that he lacked jurisdiction.

199. There is consequently no discretionary detention decision for the BIA to review in the conventional sense. There is no determination of dangerousness. There is no determination of flight risk. There is no bond amount. There is no analysis of Petitioner's family ties. There is no analysis

of her community ties. There is no alternatives-to-detention analysis. And there is no finding that detention is necessary.

200. The question presented to this Court is therefore antecedent and constitutional: may the Government continue to imprison a person with approximately twenty-six years of established liberty where no neutral decisionmaker has ever determined that imprisonment is necessary?

201. Neither *Leonardo* nor the ordinary bond-appeal exhaustion cases answer that question.

**THE SEPTEMBER 1 JURISDICTIONAL RULING EFFECTIVELY LEAVES THE HABEAS COURT AS THE ONLY NEUTRAL JUDICIAL FORUM PRESENTLY CAPABLE OF ADJUDICATING THE NECESSITY OF PETITIONER'S DETENTION**

202. Judge Marcus's jurisdictional ruling has consequences beyond exhaustion.

203. DHS continues to incarcerate Patricia. DHS possesses discretionary parole authority, but DHS is the detaining agency.

204. An internal Executive parole decision is not equivalent to an adjudication before a neutral decision-maker.

205. USCIS is responsible for determining what action it will take concerning adjustment; USCIS does not adjudicate the constitutional necessity of Patricia's incarceration.

206. The Immigration Judge has determined that he lacks custody jurisdiction.

207. Thus, no first-instance neutral administrative adjudicator is presently deciding whether Petitioner must remain in a detention facility.

208. The BIA could theoretically review the jurisdictional conclusion, but no such appeal is pending and, in any event, it cannot retroactively supply the process Petitioner's constitutional claim alleges was required before detention.

209. This Court therefore is the only neutral judicial forum presently capable of answering whether Petitioner's current physical confinement violates the Fifth Amendment and providing effective habeas relief.

210. That is not an expansion of habeas jurisdiction. It is its traditional function.

211. Section 2241 exists so that Executive detention does not become self-justifying merely because the Executive Branch's own adjudicatory machinery supplies no adequate forum for testing the legality of custody.

## COUNT ONE

### DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW: FAILURE TO PROVIDE CONSTITUTIONALLY REQUIRED PRE-DEPRIVATION PROCESS

212. Petitioner re-alleges paragraphs 1 through 211.

213. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law.

214. Its protections apply to persons physically present in the United States, including noncitizens whose presence is unlawful or disputed. *Zadvydas*, 533 U.S. at 693.

215. The first question is whether the Government interfered with a protected liberty interest. Petitioner possessed an exceptionally substantial liberty interest.

216. In *Morrissey*, the Supreme Court recognized that conditional liberty allows an individual to be gainfully employed, remain with family and friends, and “form the other enduring attachments of normal life.” 408 U.S. at 482.

217. In *Young*, the Supreme Court likewise held that conditional release can create a liberty interest protected by due process even where the underlying statutory scheme gives the Government significant authority over the individual's continued freedom. 520 U.S. at 147–49.

218. Patricia's twenty-six years of physical freedom encompassed all of those interests. She worked. She raised children. She established a household. She formed family and community relationships. She pursued

immigration relief. She lived openly rather than in physical Government custody.

219. The fact that her liberty was conditional upon immigration law does not render it constitutionally valueless.

220. As the Central District recently explained in *Trujillo-Hernandez*, even where a statute authorizes arrest and detention, an existing liberty interest can require procedural protections beyond those stated in the detention statute.

221. *Kadovic* confirms that the protected interest is not limited to persons who can identify a formal prior bond order. Governmental acquiescence in years of continued freedom can itself support a powerful interest in remaining free from arbitrary detention.

222. And *Galeas Dolores Eris* confirms that longstanding residence and established community ties weigh heavily in favor of a substantial liberty interest requiring pre-deprivation process.

223. Petitioner's approximately twenty-six years of liberty therefore fall squarely within the constitutional protection recognized by those authorities.

//

//

//

## THE MATHEWS FACTORS REQUIRED A NEUTRAL PRE-DEPRIVATION DETERMINATION BEFORE PETITIONER'S LIBERTY WAS REVOKED

224. The process due is determined under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

225. *Mathews* weighs the private interest affected, the risk of erroneous deprivation under the procedures employed and probable value of additional safeguards, and the Government's interest and administrative burden.

226. Every factor favors Petitioner.

### A. Petitioner's Private Interest Is Exceptionally Weighty

227. Petitioner's private interest is freedom from imprisonment. That interest lies at the heart of the Due Process Clause. *Zadvydas*, 533 U.S. at 690.

228. Its weight is amplified by the extraordinary duration of Petitioner's pre-detention liberty.

229. Twenty-six years permitted Petitioner to build nearly every aspect of her adult life in the United States.

230. The Government's action did not merely change one reporting requirement. It removed Petitioner from her family, home, employment, and community and placed her in a detention facility.

231. The first *Mathews* factor therefore weighs overwhelmingly in Petitioner's favor.

**B. The Risk of Erroneous Deprivation Is Unusually High**

232. The second factor is equally compelling.

233. No neutral adjudicator found detention necessary before June 10. No neutral adjudicator has found detention necessary since June 10.

234. The only Immigration Court custody determination is a finding that the Court lacks jurisdiction. The risk of error is further illustrated by the Government's own contradictory records.

235. USCIS said Patricia was not an arriving alien. EOIR said Patricia was.

236. That classification has consequences both for the adjustment process and for access to ordinary bond jurisdiction.

237. The two responsible components therefore disagree about a foundational fact of Petitioner's procedural posture.

238. Yet physical detention continues automatically while that contradiction remains unresolved.

239. A pre-deprivation hearing would have required a neutral decision-maker to answer an entirely different and constitutionally important question:

240. Had anything actually changed such that Patricia, after approximately twenty-six years of liberty, had become a danger or genuine flight risk requiring incarceration?

241. That question remains unanswered.

242. The second *Mathews* factor strongly favors Petitioner.

### C. The Government's Interest in Dispensing With Neutral Pre-Deprivation Process Is Minimal

243. The Government undeniably possesses legitimate interests in ensuring Petitioner's appearance and protecting the community.

244. But those interests do not explain why a hearing could not occur before detention. Custody hearings are routine.

245. The Government already maintains administrative mechanisms capable of assessing flight risk, danger, supervision, and release conditions.

246. Recent Central District cases have repeatedly found that the administrative burden associated with a neutral pre-deprivation hearing is modest compared with the individual's fundamental liberty interest.

247. Respondents have identified no emergency circumstance particular to Petitioner demonstrating that immediate detention without prior process was necessary.

248. Accordingly, the third *Mathews* factor also weighs heavily in Petitioner's favor.

249. Detention without constitutionally adequate pre-deprivation process therefore violated the Fifth Amendment.

## COUNT TWO

## CONTINUED DETENTION IS ARBITRARY AND EXCESSIVE WHERE REMOVAL IS NOT IMMINENT, NO NEUTRAL DECISIONMAKER HAS FOUND DETENTION NECESSARY, AND CONTINUED CONFINEMENT DEPENDS UPON USCIS ADMINISTRATIVE ACTION

250. Petitioner re-alleges paragraphs 1 through 249.

251. Immigration detention is civil, not punitive. Civil confinement must remain reasonably related to legitimate regulatory objectives. *Zadvydas*, 533 U.S. at 690; *United States v. Salerno*, 481 U.S. 739, 747 (1987).

252. Petitioner does not invoke the six-month post-removal-order presumption discussed in *Zadvydas*.

253. She is not presently detained under that posture. Rather, she relies upon the underlying constitutional principle that civil detention cannot become excessive or arbitrary in relation to its nonpunitive purpose.

254. Removal is not presently imminent.

255. The Immigration Court has affirmatively postponed Petitioner's proceeding to afford USCIS additional time to address adjustment.

256. Continued incarceration therefore does not presently serve the purpose of holding Petitioner briefly for execution of an immediately forthcoming removal.

257. Nor has the Government shown that detention is necessary to ensure appearance. No neutral adjudicator has made that finding.

258. Petitioner's approximately twenty-six-year residence, United States citizen family members, approved I-130, pending adjustment matter, continuing legal representation, fixed proposed residence, employment history, and absence of criminal convictions provide powerful incentives to remain accessible to immigration authorities.

259. If the Government believes additional safeguards are appropriate, numerous less restrictive mechanisms exist. Physical incarceration is not self-evidently necessary simply because those mechanisms exist outside a detention facility.

260. Continued detention while USCIS and EOIR resolve the Government's own jurisdictional conflict has therefore become increasingly attenuated from any individualized regulatory necessity.

261. The Fifth Amendment does not authorize imprisonment as an administrative waiting room. Petitioner's continued detention violates due process.

## COUNT THREE

## EVEN ASSUMING SECTION 235(b) GOVERNS, STATUTORY DETENTION AUTHORITY DOES NOT EXTINGUISH THE FIFTH AMENDMENT LIBERTY INTEREST CREATED BY DECADES OF GOVERNMENT-AUTHORIZED OR GOVERNMENT-ACQUIESCED FREEDOM

262. Petitioner realleges paragraphs 1 through 267.

263. For purposes of this Count, Petitioner assumes without conceding that the Immigration Judge properly applied *Matter of Q. Li* and that § 235(b) supplies statutory detention authority. That assumption does not defeat the constitutional claim.

264. *Jennings v. Rodriguez* held that §§ 1225(b)(1), 1225(b)(2), and 1226(c) do not themselves contain the periodic bond-hearing requirement the Ninth Circuit had previously read into them. 583 U.S. at 297–312.

265. But *Jennings* expressly declined to decide the constitutional claims arising from prolonged or mandatory detention. *Id.* at 312.

266. Statutory authority and constitutional process therefore remain analytically distinct. *Trujillo-Hernandez* illustrates the distinction.

267. The Government's asserted authority to detain did not eliminate the due-process protection arising from the petitioner's prior parole and established liberty. The Central District found a protected interest and ordered immediate release.

268. *Kadovic* similarly confirms that Government authority to arrest does not mean that years of existing liberty may be revoked without constitutionally sufficient process.

269. Petitioner therefore need not obtain reversal of *Matter of Q. Li* in order to prevail.

270. Even assuming the Government possesses statutory detention authority, its exercise remains subject to the Fifth Amendment.

271. Petitioner's detention violated that constitutional limitation.

**COUNT FOUR**

**THE POST-DEPRIVATION CUSTODY PROCESS DID NOT CURE THE VIOLATION**

272. Petitioner realleges paragraphs 1 through 277.

273. Respondents may contend that Petitioner's September custody proceeding supplied sufficient post-deprivation process.

274. It did not.

275. The Immigration Judge did not determine whether detention was necessary. He determined that he lacked jurisdiction to make that determination. Thus, even as post-deprivation process, the proceeding never reached the constitutionally relevant question.

276. More fundamentally, where the constitutional injury is the extinguishment of established liberty without required pre-deprivation

procedures, a later hearing does not necessarily cure the completed deprivation.

277. *Galeas Dolores Eris* expressly rejected the proposition that the possibility of a later bond hearing sufficiently remedies the violation created by detention without pre-deprivation process. The court concluded that restoration of the prior status quo required release.

278. The same reasoning applies here with exceptional force.

279. Petitioner's liberty existed for approximately twenty-six years before June 10.

280. A future bond hearing—whether ordered by the BIA or this Court—cannot restore the process that should have preceded detention.

281. Immediate release is therefore the remedy that restores the last uncontested status preceding the constitutional deprivation.

**IMMEDIATE RELEASE IS THE APPROPRIATE HABEAS REMEDY**

282. Habeas corpus exists to test the lawfulness of physical confinement and to order release where that confinement is unlawful.

283. Section 2243 instructs the Court to dispose of habeas matters "as law and justice require."

284. Under the circumstances presented, another period of administrative waiting is not an adequate remedy.

285. Petitioner has already been imprisoned since June 10. The Immigration Court says it has no bond jurisdiction.

286. USCIS previously declined adjustment jurisdiction based upon a factual/legal classification EOIR now rejects.

287. The merits proceeding has been continued to give USCIS time to act.

288. No neutral decision-maker has found Patricia dangerous. No neutral decision-maker has found Patricia a flight risk. No neutral decision-maker has found physical confinement necessary.

289. A BIA appeal could not cure the pre-deprivation constitutional injury and would prolong the present one.

290. Recent Central District decisions have ordered immediate release under materially analogous due-process circumstances. *Trujillo-Hernandez* ordered immediate release and restoration of the conditions that existed before re-detention.

291. *Kadovic* ordered release within twenty-four hours under the terms and conditions that existed before detention.

292. *Galeas Dolores Eris* likewise ordered immediate release after concluding that only restoration of the status quo adequately remedied detention imposed without required pre-deprivation process.

293. Petitioner's approximately twenty-six years of liberty make the remedial rationale particularly compelling.

294. Immediate release does not grant Petitioner adjustment of status. It does not terminate her removal proceedings. It does not prevent USCIS from adjudicating her I-485. It does not prevent DHS from litigating any issue within the removal case. It does not exempt Petitioner from reporting requirements. It does not prevent reasonable electronic or other noncustodial supervision[6].

295. It simply restores Petitioner's physical liberty while the Government adjudicates her immigration status through the processes Congress has provided.

296. That is the proper habeas remedy.

//

//

//

//

[6] Recent courts confronting the same remedial question have repeatedly rejected the proposition that a future bond hearing necessarily cures an already completed pre-deprivation due process violation. See *Galeas Dolores Eris*, Dkt. 18 at 5–6 (post-deprivation hearing does not remedy failure to provide required pre-deprivation process; immediate release restores status quo); *Orozco-Salazar*, Dkt. 13 at 8–10 (release rather than later bond hearing was narrowly tailored to restore the pre-violation status quo); *Trujillo-Hernandez*, Dkt. 15 (immediate release to prior conditions); *Patrick v. LaRose*, No. 3:26-cv-04670-JAO-BJW, Dkt. 6 at 6–8 (S.D. Cal. Aug. 31, 2026) (even assuming § 1225 detention authority, expiration of parole did not extinguish due-process protection; immediate release ordered).

## PROSPECTIVE DUE PROCESS PROTECTION IS NECESSARY TO MAKE THE WRIT EFFECTIVE

297. Release alone would provide incomplete relief if Respondents could immediately re-detain Petitioner based upon the same unchanged circumstances.

298. Recent Central District decisions have therefore paired habeas release with prospective safeguards requiring constitutionally adequate process before renewed detention.

299. *Galeas Dolores Eris* required that future re-detention comply with due process, including a neutral hearing and a Government burden supported by clear and convincing evidence.

300. Petitioner requests comparable protection. She does not request immunity from all future immigration detention. Material circumstances may change. If they do, the Government may proceed in accordance with lawful authority and due process.

301. But on materially unchanged circumstances, Respondents should not be permitted simply to recreate the unconstitutional custody immediately after issuance of the writ.

## ALTERNATIVE RELIEF

302. Immediate release is the principal relief warranted because the constitutional violation concerns the absence of pre-deprivation process and

because no neutral administrative adjudicator presently has conducted an individualized necessity determination.

303. If the Court declines to order immediate release outright, Petitioner alternatively requests that the Court order a constitutionally adequate custody hearing within twenty-four hours.

304. At such hearing, the Government should bear the burden, by clear and convincing evidence, of establishing that Petitioner presently poses a danger to the community or a genuine flight risk.

305. The Government should further be required to establish that no reasonable condition or combination of conditions could adequately mitigate any proven risk.

306. The neutral decision-maker should meaningfully consider Petitioner's approximately twenty-six years of residence, United States citizen family ties, approved I-130, pending adjustment application, proposed residence, employment history, absence of criminal convictions, record of compliance, and all reasonable alternatives to incarceration.

307. If such a hearing is not completed within twenty-four hours, Petitioner should be released immediately.

308. That alternative relief would preserve every legitimate Government interest while preventing indefinite detention unsupported by any individualized determination of necessity.

**PRAYER FOR RELIEF**

309. WHEREFORE, Petitioner PATRICIA GARCIA JIMENEZ respectfully requests that this Court:

(a) assume jurisdiction pursuant to 28 U.S.C. § 2241;

(b) issue the writ of habeas corpus; declare that Respondents violated Petitioner's Fifth Amendment right to due process by extinguishing approximately twenty-six years of established physical liberty without constitutionally adequate pre-deprivation procedures;

(c) declare that the September 1, 2026 Immigration Court order is a jurisdictional ruling and does not constitute an individualized finding that Petitioner presents a danger, flight risk, or other circumstance requiring continued physical detention;

(e) declare that Petitioner's continuing detention without such an individualized determination violates the Fifth Amendment; and

(f) Order Respondents to immediately release Patricia Garcia Jimenez from physical immigration custody, subject only to reasonable and narrowly tailored noncustodial conditions necessary to ensure her future appearance.

310. Petitioner further requests that Respondents be prohibited from re-detaining her on materially unchanged circumstances without reasonable advance notice and a pre-deprivation hearing before a neutral decision-maker at which Respondents bear the burden, by clear and convincing evidence, of proving that Petitioner presents a current danger or flight risk that cannot reasonably be mitigated through any condition or combination of conditions.

311. In the alternative, Petitioner requests an order requiring Respondents to provide a constitutionally adequate individualized custody hearing within twenty-four hours, carrying the procedural protections described above, and directing Petitioner's immediate release if Respondents fail timely to provide that hearing or fail to carry their burden.

312. Petitioner additionally requests that the Court retain jurisdiction to enforce its judgment, require compliance with General Order 26-05 concerning any contemplated transfer outside the Central District during the pendency of this action, and grant such other and further relief as law and justice require.

Dated this 25th day of September, 2026.

/s/_Alex Galvez____
Alex Galvez, Esq.

**VERIFICATION BY PETITIONER PURSUANT TO 28 U.S.C. § 2242**

I, Alex Galvez**,** am submitting this verification on behalf of PATRICIA GARCIA JIMENEZ, who is currently detained by the U.S. Department of Homeland Security at the ADELANTO DETENTION FACILITY in Adelanto, California. Petitioner is being held under conditions that severely restrict or prevent meaningful communication with the outside world.

As a result, he is unable to review or sign this petition personally or to prepare and file it on his own behalf.

I have communicated with Petitioner to the extent possible and have obtained the factual information contained in this Petition from my direct knowledge, records, and reliable sources. I hereby verify that, to the best of my knowledge and belief, the factual statements contained in the attached Petition for Writ of Habeas Corpus are true and correct, and that I could testify to those facts if called upon to do so.

Date: 9/25/2026

/s/ Alex Galvex_________
Alex Galvez